UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER STARNES,

     Plaintiff,

v.                        Case No. 8:20-cv-3001-KKM-AAS

CHRISTOPHER NOCCO, JEFFERY
HARRINGTON, KEN GREGORY,
STEVEN FRICK, JOSEPH IRIZARRY,
and JENNIFER CHRISTENSEN,

     Defendants.

_____/

## ORDER

Plaintiff Christopher Starnes resigned from the Pasco County Sheriff's Office following an Internal Affairs Complaint alleging that he engaged in an inappropriate sexual relationship with a confidential informant. Although dressed up as constitutional and Racketeer Influenced and Corrupt Organizations Act (RICO) claims, the amended complaint's factual allegations center around Starnes's employment grievance against his former supervisors at the Sheriff's Office. His efforts to transform commonplace employment disputes into RICO and constitutional ones are unsuccessful. Instead, Starnes's amended complaint comprises a shotgun pleading and, even for the identifiable claims, fails to state a claim upon which relief can be granted. As a result, the Court grants

1

Defendants' motion to dismiss, (Doc. 18), dismisses Starnes's amended complaint with prejudice, and directs the clerk to enter judgment in Defendants' favor.

## I.   Procedural History

The history of this litigation is both protracted and procedurally painful, yet with shockingly little advancement on the merits. On April 16, 2019, Christopher J. Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office ("Squitieri litigation"), alleging a civil RICO and state law claim. *See Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS. A couple months later, an amended complaint was filed in the case; it named twenty plaintiffs—including Starnes—and forty-five defendants. After receiving leave from the Court (at that time, the case was before the Honorable Charlene Honeywell), the Squitieri litigation plaintiffs filed a second amended complaint on August 7, 2019. Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. During a hearing on defendants' motion to dismiss, Judge Honeywell step-by-step explained the deficiencies remaining in the plaintiffs' pleading and orally granted-in-part defendants' motion to dismiss the second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. The Squitieri litigation plaintiffs filed a third amended complaint, which defendants again moved to dismiss.

After entering an order to show cause and considering plaintiffs' response, Judge Honeywell severed the Squitieri litigation claims and ordered plaintiffs to file separate actions against the appropriate defendants.

On December 16, 2020, Starnes initiated this action by filing a complaint against Defendants Christopher Nocco, Jeffery Harrington, Ken Gregory, Steven Frick, Joseph Irizarry, and Jennifer Christensen. (Doc. 1.) Starnes then filed an amended complaint on February 19, 2021, (Doc. 17), alleging a civil RICO claim (Count I) and various constitutional violations (Count II). Defendants moved to dismiss the amended complaint as a shotgun pleading and for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.) After the Court stayed discovery pending the resolution of the motion to dismiss, Starnes filed an opposition to Defendants' motion. (Doc. 23.) This case was subsequently reassigned to the undersigned. (Doc. 25.)

## II.    Factual Background

Employed by the Pasco County Sheriff's Office for twenty-three years, Starnes was a "highly decorated lieutenant" in the force. (Doc. 17 at ¶¶ 25, 37.) His amended complaint recounts several events—without relevant dates to know how they are connected to one another—that occurred at the Sheriff's Office during his career. For instance, he "suffered a traumatic brain injury after being assaulted by subjects outside of a bar" and then returned

to work despite some Defendants wanting him to retire. (*Id.* at ¶ 25.) After returning to work, he was assigned an "unrealistic span of control," supervising "two and sometimes three districts" without the proper support. (*Id.* at ¶ 26.) One day over lunch, Starnes informed Defendant Harrington "everything that the narcotics division was doing wrong under its leadership." (*Id.* at ¶ 27.)

At some point, Defendants Frick and Irizarry "ordered" Starnes to give another deputy, Brent Taber, a negative evaluation. (*Id.* at ¶ 28.) Two days after Starnes refused to give Deputy Taber a false negative evaluation, Starnes "was asked to report to Internal Affairs for an interview." (*Id.* at ¶¶ 29–30.) Internal Affairs informed Starnes that two confidential informants had filed a complaint against him, alleging that Starnes had sexual intercourse with one of them. (*Id.* at ¶ 31.) Starnes alleges that Defendants Nocco, Harrington, Gregory, and Christensen "knew the Internal Affairs Complaint filed against [Starnes] was fabricated and wanted [Christensen] to personally handle the investigation to ensure that [Starnes] would be forced out of the agency." (*Id.* at ¶ 33.) According to Starnes "[t]his hostile work environment created by [Defendants] was the direct cause of another medical relapse." (*Id.* at ¶ 30.) Starnes alleges that, ultimately, Defendants "extorted" him "by forcing him to sign a contract which stated [that] the Pasco [County] Sheriff's Office would find the Internal Affairs Complaint falsely filed against him as unfounded if he resigned." (*Id.* at ¶ 34.) Facing "extensive medical bills" and "fear of further

4

fabricated retaliation and [the] inability to care for his family if fired," Starnes signed the contract and resigned. (*Id.* at ¶ 35.)

In his amended complaint, Starnes also described a new law enforcement policy and procedure, the "Intelligence Led Policing" initiative ("ILP Program"), that was implemented during his tenure at the Sheriff's Office. (*Id.* at ¶ 18.) The ILP Program, which Starnes alleges is unconstitutional, "targets those deemed to be 'prolific offenders'" and instructs law enforcement "to focus [their] efforts on those criminals who [they] have reason to believe are frequent or prolific offenders." (*Id.* at ¶¶ 18, 20.) "The major problem with the ILP practices," Starnes alleges, is that they rest on the notion that "[s]peed is critical to success and bureaucratic processes that delay implementation must be overcome"—even if those "bureaucratic processes" "are the fundamental constitutional considerations of 'probable cause' and the many other constitutional protections that apply to all citizens in a free society." (*Id.* at ¶ 21.) And when Starnes did not "play[ ] along" and "enforc[e] the unconstitutional dimensions and components of the ILP Program against innocent citizens of Pasco County," Defendants retaliated against him with the above-described "baseless internal departmental investigation intended to ruin [his] career." (*Id.* at ¶¶ 23, 24.)

III.   Analysis

   a.  Shotgun Pleading

Defendants first argue that the amended complaint should be dismissed as an impermissible shotgun pleading. (Doc. 18 at 6.) The Court concurs.

   i.  Legal Standard

A shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Although shotgun pleadings can take many forms, the Eleventh Circuit has identified four "rough types" or categories of shotgun pleadings. *Id.* at 1321–23. First, the most common type is a complaint that contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321 (footnote omitted). The second type of shotgun pleading is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22 (footnote omitted). "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23 (footnote omitted). "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of

the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* (footnote omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote omitted). And they violate the Federal Rules of Civil Procedure, most notably Rules 8 and 10.

### ii. Analysis

Defendants argue that Starnes's amended complaint commits the venial sin of being "replete with 'conclusory, vague, and immaterial facts obviously not connected to any particular cause of action' and otherwise fails to advise defendants of the claims asserted against them." (Doc. 18 at 6–7 (citation omitted).) The Court generally agrees, but also finds that the amended complaint makes the mortal mistake of not separating each claim for relief into a different count. Starnes received notice of these pleading deficiencies once the amended complaint[1] was filed in the Squitieri litigation in 2019. Indeed, at a hearing on the defendants' motion to dismiss the second amended complaint in the Squitieri litigation, Mr. John F. McGuire—Starnes's attorney in the Squitieri litigation and in this case and the signatory of Starnes's amended complaint here—admitted that the second amended complaint was "poorly drafted." *Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS, (Doc. 171 at 7.) In the same hearing, Judge Honeywell opined that "the complaint [was]

---

[1] Starnes joined as a plaintiff in the amended complaint filed in the Squitieri litigation.

so poorly drafted" that she could not "even get to the merits of it" and that the amended complaint was "absolutely" a "shotgun pleading"; "there [was] no mistake about it." (*Id.* at 6, 8.) Despite these judicial warnings and multiple motions to dismiss in the Squitieri litigation that highlighted the complaints' shortfalls, the deficiencies remained in Starnes's three Squitieri litigation complaints and two complaints in this case. Indeed, rather than correct the deficiencies, Starnes persisted in submitting poorly drafted pleadings by copying and pasting numerous paragraphs from previous iterations of the Squitieri litigation complaints and his first complaint in this case into his amended complaint that is now before the Court.

To begin, Starnes's amended complaint is plagued with immaterial and seemingly irrelevant allegations that do not obviously connect to any particular cause of action. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (explaining that a complaint was undoubtably a shotgun pleading where it was "rife with immaterial factual allegations"). Count I of the amended complaint (the RICO claim) opens with Starnes "re-alleg[ing] and re-incorporat[ing]" all of the preceding paragraphs in the complaint (paragraphs 1–38)—including the sections on jurisdiction and venue, the parties, and the general allegations. (Doc. 17 at ¶ 39.) He makes the same mistake in Count II of his complaint (various constitutional violations), "re-alleg[ing] and re-incorporat[ing]"

paragraphs 1–38 of the amended complaint—leaving Defendants and the Court to puzzle over which allegations connect to which element of the RICO claim. (Doc. 17 at ¶ 45.)

Attempting to construe which allegations connect to each claim proves an especially difficult task here where Starnes includes many allegations that do not obviously relate to any claim in the amended complaint. For example, Starnes alleges—without explanation of its relevance or consequence—that during a lunch meeting with Defendant Harrington, he "laid out everything that the narcotics division was doing wrong under its leadership, which was dangerous and could get detectives and deputies injured or killed." (Doc. 17 at ¶ 27.) Starnes also alleges that he was "assaulted by subjects outside of a bar" and "after returning to work following his traumatic brain injury, [he] was immediately placed in an unrealistic span of control, supervising two and sometimes three districts" without assistance, despite his requests for help. (*Id.* at ¶¶ 25–26.) Later, Starnes mentions that he suffered a "medical relapse" due to the hostile work environment created by Defendants. (*Id.* at ¶ 30.) Neither the amended complaint nor Starnes's briefing explains how these allegations are relevant to or support his alleged claims. Are they integral aspects of the ILP he objected to? Are they retaliation for voicing that objection and somehow allegations supporting Count II? Unclear.

By way of example, Defendants complain that "[i]t is unclear what Starnes claims to be the reason for his alleged coerced resignation." (Doc. 18 at 8). The Court agrees. At

"various points [Starnes alleges] that (1) 'Executive Staff' and certain Defendants wanted him to retire rather than return from medical leave; (2) he 'laid out' alleged failures in leadership within the narcotics division during a lunch meeting, and (3) he refused to give another deputy a negative employee evaluation." (*Id.*) In short, many allegations in Starnes's amended complaint appear to be immaterial or irrelevant to his claims, leaving Defendants to speculate about the grounds on which Starnes's claims rest. *See Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). And Starnes's opposition to Defendants' motion to dismiss, (Doc. 23), fails to provide the much-needed explanation and clarity, leaving the Court and Defendants unsure of which allegations are intended to support which claims for relief. *See Weiland*, 792 F.3d at 1325.

Additionally, Starnes's amended complaint is fraught with vague and conclusory allegations. *See Barmapov*, 986 F.3d at 1325 (explaining that a complaint was undoubtably a shotgun pleading where it included "numerous vague and conclusory allegations"). For example, Starnes alleges that Defendants "knew the Internal Affairs Complaint filed against [him] was fabricated" to "ensure that [Starnes] would be forced out of the agency." (Doc. 17 at ¶ 33.) And, without explaining how, Starnes alleges that Defendants "extorted' him by "forcing him to sign a contract." (*Id.* at ¶ 34.) Without explanation or factual

allegations for support, such vague and conclusory statements are insufficient to meet the pleading requirements of Rule 8(a)(2). *See Barmapov*, 986 F.3d at 1324–26, 1322.

Further, Count II improperly lumps together a variety of constitutional violations. (*See* Doc. 17 at ¶ 45–50.) Starnes alleges that "Defendants, in their official capacities, punished [Starnes] for exercising his First Amendment rights," (*id.* at ¶ 47); that Defendant Nocco took "a valuable property right protected by the Constitution" away from Starnes (his job), (*id.* at ¶ 48); that Defendants "denied [Starnes] equal protection of the law," (*id.* at ¶ 49); and that Defendants' conduct "constitutes an unlawful and unauthorized taking of [Starnes's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment," (*id.*). In the six paragraphs that comprise Count II, Starnes appears to allege violations of his First, Fifth, and Fourteenth Amendment rights. (*See id.* at ¶¶ 45–50.) Of course, his earlier allegation in the amended complaint listed "the Fourth, Fifth, and Fourteenth Amendment[s]." (*See id.* at ¶ 2 (without mentioning the First Amendment)). "[W]here a plaintiff asserts multiple claims for relief, a properly drafted pleading 'will present each claim for relief in a separate count.'" *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 907 (11th Cir. 2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). The failure to separate each claim for

relief into a different count, as required by Rule 10(b), is a hallmark of a shotgun pleading and makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson*, 77 F.3d at 366; *see Barmapov*, 986 F.3d at 1325. Accordingly, the Court dismisses Starnes's amended complaint as an impermissible shotgun pleading.

### b. Failure to State a Claim under Rule 12(b)(6)

In the alternative, Defendants argue that Starnes's claims—the civil RICO claim and constitutional claims—fail to state a claim upon which relief may be granted. (Doc. 18 at 8–25.) Again, the Court agrees.

### i. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### ii. RICO Claim

#### 1. Legal Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). Failing to adequately plead any one of these elements warrants dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Because Starnes failed to

13

plead factual allegations to establish the requisite predicate acts of racketeering activity or a pattern of racketeering activity, the Court dismisses Starnes's amended complaint for failing to state a claim.

## 2. Analysis

### a. Predicate acts under 18 U.S.C. § 1961(1)

An act of racketeering activity, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). Starnes alleges that Defendants have "engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity'" through the following predicate acts: (1) retaliating against a witness, victim, or informant under 18 U.S.C. § 1513(e); (2) tampering with a witness, victim, or informant under § 1512(b); (3) mail and wire fraud under §§ 1341 and 1343, respectively; and (4) extortion as defined by state law under § 1961(1)(A).[2] (Doc. 17 at ¶¶ 14, 43.) "A plaintiff must put forward enough

---

[2] Starnes also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Starnes only cites to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only is this state law claim insufficiently pleaded, section 895.05(6) limits the relief available for a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Starnes is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997))). Although Starnes argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage

facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. Starnes fails to do so and, consequently, fails to sufficiently plead any of these predicate acts for the reasons discussed below.

### i.   Predicate acts under 18 U.S.C. § 1513(e)

Starnes alleges that Defendants violated 18 U.S.C. § 1513(e) (retaliating against a witness, victim, or informant) when Defendants "intentionally created a hostile work environment for the purpose of causing undue stress on [Starnes] in order to cause additional medical issues in retaliation for his testimony in an official proceeding." (Doc. 17 at ¶ 40.) Starnes provides no further explanation or context showing how Defendants violated § 1513(e) in his amended complaint. And his response in opposition to Defendants' motion to dismiss omits any reference to this predicate act. (*See* Doc. 23.) One conclusory statement in Starnes's amended complaint falls short of adequately pleading a violation of § 1513(e).

Section 1513(e) states: "Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful

---

[Starnes] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 23 at 4), this argument fails. Starnes does not mention injunctive relief anywhere in his amended complaint (*see* Doc. 17), much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his amended complaint (*see* Doc. 17) nor his response (*see* Doc. 23) contain allegations explaining how an injunction could provide the relief he seeks (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, as required under Florida's criminal RICO statute.

information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both." The statute later defines "law enforcement officer" as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government."[3] § 1515(a)(4). Starnes makes no allegation that he provided information—truthful or otherwise—to any law enforcement officer as defined by the statute (i.e., an officer or employee of the federal government or a person authorized to act on its behalf). And Starnes makes no allegation that he provided information relating to the commission or possible commission of a federal offense to a law enforcement officer. Indeed, Starnes's allegations are directed at county officers at the Sheriff's Office and no allegations relating to a federal officer or employee or federal offense exist. Accordingly, Starnes fails to sufficiently plead a predicate act under § 1513(e).

### ii.  Predicate acts under 18 U.S.C. § 1512(b)

Starnes alleges that Defendants violated 18 U.S.C. § 1512(b) (tampering with a witness, victim, or an informant). But § 1512(b) prohibits interference with those testifying

---

[3] In full, the statute defines the term:

> (4) the term "law enforcement officer" means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant--
> > (A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or
> > (B) serving as a probation or pretrial services officer under this title . . . .

18 U.S.C. § 1515(a)(4).

in an "official proceeding." Because Starnes never alleges that he was involved in an "official proceeding," as statutorily defined, and because Starnes fails to otherwise explain how Defendants violated § 1512(b), he fails to plausibly plead a violation of § 1512(b).

To begin, although Starnes alleges that Defendants engaged in racketeering activity by violating § 1512(b), (Doc. 17 ¶¶ 14, 44), he fails to provide any other allegations about the violation. And his response in opposition to Defendants' motion to dismiss excludes any reference to the statute. (*See* Doc. 23.) Indeed, the only statements about the statute in his amended complaint are: "Defendants, in their individual capacities, have engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity' through: 18 U.S.C. § 1512(b) – Tampering with a witness, victim, or an informant," (Doc. 17 at ¶ 14 (emphasis omitted)), and "[t]he conduct described in the General Allegations above shows that the Defendants specified in the above Counts, in their individual capacity, have engaged in conduct in violation . . . [of] 18 U.S.C. § 1512," (*id.* at ¶ 44). These statements are legal conclusions that the Court need not accept as true and are insufficient to support his claims without supporting factual allegations. *Ashcroft*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

17

Further, no allegations in the amended complaint can be construed as supporting a violation of § 1512(b). Section 1512(b) subjects anyone who knowingly uses—or attempts to use—intimidation, threats, or persuasion to influence, delay, or prevent the testimony of any person in an official proceeding to fine or imprisonment or both.[4] As Defendants point out, the statute repeatedly states that such conduct is prohibited in an "official proceeding." *See* § 1512(b). The statute defines "official proceeding" as either (A) "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax

---

[4] Subsection (b) states in full:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>> (1) influence, delay, or prevent the testimony of any person *in an official proceeding*;
>> (2) cause or induce any person to--
>>> (A) withhold testimony, or withhold a record, document, or other object, *from an official proceeding*;
>>> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use *in an official proceeding*;
>>> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, *in an official proceeding*; or
>>> (D) be absent from an *official proceeding* to which such person has been summoned by legal process; or
>> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b) (footnotes omitted; emphasis added).

Court, a judge of the United States Court of Federal Claims, or a Federal grand jury"; (B) "a proceeding before the Congress"; (C) "a proceeding before a Federal Government agency which is authorized by law"; or (D) "a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce." 18 U.S.C. § 1515(a)(1).

Starnes identifies no testimony, witness, threats, or otherwise intimidating conduct in his amended complaint that could be construed to support a violation of § 1512(b). And Starnes alleges no facts in his amended complaint that even hint at the occurrence of an "official proceeding." Any internal affairs investigation in the Sheriff's Office or any related report or statement cannot satisfy the statutory definition under § 1515(a)(1). Starnes thus fails to plead a predicate act under § 1512(b) on which a RICO claim could be based.

### iii. Predicate acts under 18 U.S.C. §§ 1341 and 1343

Starnes alleges that "Defendants [Frick and Irizarry], as well as the Defendants listed as being within the chain of command, in their individual capacity, violated 18 U.S.C. § 1341 [(mail fraud)] . . . and . . . § 1343 (wire fraud)] when [they] knowingly and intentionally created, produced, and supported fraudulent documents to support the retaliatory Internal Affairs Complaint." (Doc. 17 at ¶ 41.) Defendants argue that Starnes's

"[a]mended [c]omplaint is devoid of any allegations which plausibly suggest any defendant is responsible for mail or wire fraud—much less allegations alleged with sufficient specificity to as to meet the heightened pleading requirements of" Rule 9(b). (Doc. 18 at 16.) Defendants are correct.

To begin, Starnes fails to plead any allegations that could be generally construed as stating claims of mail or wire fraud. To establish liability under the federal mail and wire fraud statutes, a plaintiff must prove: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) (citation omitted). Not one paragraph in the amended complaint mentions the United States mail system or any kind of wire, and certainly no paragraph alleges that Defendants used these systems to execute a fraud scheme. Indeed, other than a vague statement about mail and wire fraud being used to create and support fraudulent documents to support a "retaliatory Internal Affairs Complaint," (Doc. 17 at ¶ 41)—which is generalized, conclusory, and insufficient—Starnes fails to allege any facts that would make it plausible that any Defendant made a false statement or orchestrated a fraudulent scheme. To be sure, the amended complaint never even identifies what money or property the Defendants attempted to obtain by means of the alleged scheme to defraud. *See Kelly v.*

*United States*, 140 S. Ct. 1565, 1571 (2020) (explaining that 18 U.S.C. § 1343, the wire fraud statute, prohibits deceptive schemes to deprive a victim of *money or property*); *United States v. Gordon*, 836 F.2d 1312, 1313 (11th Cir. 1988) (per curiam) (explaining that 18 U.S.C. § 1341, the mail fraud statute, prohibits deceptive schemes "involving the deprivation of *money or property*" (emphasis added) (citing *McNally v. United States*, 483 U.S. 350, 352 (1987))).

In addition to the basic pleading standards, Starnes must meet the heightened pleading requirements of Rule 9(b) when alleging predicate acts of fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." (citation omitted)); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (explaining that "the Plaintiffs would be required to replead their RICO claims with the specificity required in Federal Rule of Civil Procedure 9(b)"). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316–17.

Starnes's mail and wire fraud claims fall short of this standard. Starnes's amended complaint accuses Defendants Frick, Irizarry, and "Defendants listed as being within the chain of command" of violating these two criminal statutes. (Doc. 17 at ¶ 41.) But Starnes does not identify who the Defendants in the "chain of command" are; does not explain how Frick, Irizarry, or any other Defendant committed mail or wire fraud (i.e., what fraudulent statement or scheme they perpetrated); and does not allege when and where they orchestrated and carried out this fraud scheme. The Court is again left only with legal conclusions without the factual allegations to support them. *See Ashcroft*, 556 U.S. at 678. In short, Starnes's amended complaint fails to specify the time, place, and manner in which the alleged fraud occurred and fails to fully identify or provide specific allegations about the Defendants involved. *See id.* at 1317; *Brooks*, 116 F.3d at 1381.

Considering the Rule 9(b) and the Rule 12(b)(6) pleading deficiencies, Starnes fails to plead predicate acts under §§ 1341 and 1343 on which a RICO claim could be based.

### iv.   Predicate acts under 18 U.S.C. § 1961(1)(a)

In his amended complaint, Starnes alleges that Defendants engaged in the racketeering activity of extortion under 18 U.S.C. § 1961(1)(A) by threatening Starnes "to resign or face dismissal in relation to the fraudulent and unjust complaints filed against him." (Doc. 17 at ¶ 43.) Specifically, Starnes alleges, Defendants "forced [him] to resign, leaving him no reasonable alternative action to challenge these fraudulent complaints." (*Id.*)

Defendants respond that Starnes's amended complaint "fails to allege facts sufficient to demonstrate he was extorted into resigning" because Starnes "chose to resign" and "[r]esignations may still be voluntary in the face of unpleasant alternatives." (Doc. 18 at 17.)

Section 1961(1)(A) defines "racketeering" activity as "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . ." § 1961(1)(A). Section 836.05, Florida Statutes, criminalizes extortion, stating that whoever "maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a" second-degree felony. Florida's "extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). And "the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will."[5] *Id.*

---

[5] Moreover, "while generally a claim of extortion cannot be predicated on a threat to do an act which a person has a lawful right to do, one may not *threaten* to undertake an otherwise legal act to his *own*

Starnes's statement that Defendants engaged in extortion when "threatening [him] to resign or face dismissal in relation to the fraudulent and unjust complaints filed against him," (Doc. 17 at ¶ 43), is conclusory. Starnes does not allege who threatened him, the "utterances or communications" that constituted the threat, how the threat was malicious, what was "fraudulent and unjust" about the complaint lodged by a confidential information (not even complaints by the Defendants), or how an employer investigating a claim against an employee constitutes extortion. Without any supporting factual allegations, Starnes's amended complaint falls woefully short of putting "forward enough facts . . . to make [the extortion claim] independently indictable as a crime," *Cisneros*, 972 F.3d at 1215, meaning it is insufficient to state a predicate act, *see Ashcroft*, 556 U.S. at 678.

### b. Starnes fails to sufficiently allege that Defendants committed a pattern of racketeering activity.

Essential to any RICO claim is the basic requirement of establishing a pattern of racketeering activity. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "To successfully allege a pattern of racketeering activity, [a] plaintiff[] must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* at 1264. To prove "a 'pattern of racketeering

---

pecuniary advantage." *Duan v. State*, 970 So. 2d 903, 906 (1st DCA 2007) (citation omitted). Starnes has not shown that Defendants—who were his supervisors, (Doc. 17 at ¶ 16)—did not have a lawful right to initiate an Internal Affairs Complaint against him or, alternatively, threatened to initiate the complaint to their pecuniary advantage.

activity' it is not sufficient to simply establish two isolated predicate acts." *Id.* "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts . . . ." *Id.*

Even if Starnes had adequately pleaded any predicate acts (he hasn't), he fails to establish that his predicate acts constitute a pattern of racketeering activity.[6] Indeed, the Court cannot identify two alleged instances of any criminal activity—much less the pattern required by a RICO claim—in Starnes's amended complaint. Construing his amended complaint in the light most favorable to him, Starnes alleges that Internal Affairs informed him that two confidential informants filed a complaint against him alleging that he had sexual intercourse with one of the confidential informants. (Doc. 17 at ¶ 31.) He alleges that the Internal Affairs Complaint was fabricated to ensure that Starnes "would be forced out of the agency" and "extorted [Starnes] by forcing him to sign a contract" that stated that the Sheriff's Office would consider the complaint unfounded "if he resigned." (*Id.* at ¶¶ 33, 34.) And, based on Defendants' threats, Starnes signed the contract, ending his career. (*Id.* at ¶¶ 35–37.) Starnes vaguely argues that "[a]ll of the predicate acts committed against [him] occurred well within one year of each other (exact dates and times can be

---

[6] In his response to Defendants' motion to dismiss, Starnes seems to point to the ILP program to satisfy this element. (Doc. 23 at 10–12.) But Starnes does not make that allegation in his amended complaint and fails to explain, in both the operative pleading and response in opposition to the motion to dismiss, how the ILP program constitutes racketeering activity under 18 U.S.C. § 1962. None of the predicate acts pleaded in Starnes's amended complaint relate to the ILP program (or at least the connection is not explained); they all relate to Starnes's allegedly falsified internal affairs complaint and extorted resignation. (*See generally* Doc. 17.) And considering that Starnes does not clearly point to any individual predicate acts—whether related to the ILP program or not—he cannot show a pattern of racketeering activity.

25

established through discovery), were related to one another as they all served the same purpose of harassing, intimidating, and extorting Plaintiff into resigning, and pose an extreme threat of continued criminal activity." (Doc. 23 at 9–10.) But this vague statement neither establishes the occurrence of a predicate act or a pattern of such activity. To the extent that any alleged extortion occurred, it occurred *once* when Defendants threatened Starnes and Starnes resigned. But a pattern is not born from a single occurrence. Accordingly, Starnes cannot establish the "pattern of racketeering activity" element for his civil RICO claim. *See Jackson*, 372 F.3d at 1264.

### 3. RICO Claim Conclusion

Because Starnes fails to adequately allege the existence of any predicate acts or a pattern of racketeering activity and because the failure to plead any one of these elements is fatal to a RICO claim, Starnes's civil RICO claim fails.

### iii. Count II: Constitutional Violations

A generous reading of the amended complaint reveals allegations of violations of Starnes's constitutional rights under the First, Fifth, and Fourteenth Amendments.[7] (Doc. 17 at ¶¶ 47–49.) But because Starnes does not sufficiently state a claim upon which relief can be given, his constitutional claims fail. Specifically, as Defendants argue, "Starnes'

---

[7] At the beginning of his amended complaint, Starnes explains that this action arises under the "Fourth, Fifth, and Fourteenth Amendment[s] to the United States Constitution" and in Count II, he mentions the First and Fifth Amendments. (Doc. 17 at ¶¶ 2, 47, 49). The Fourth Amendment bears no relationship to any factual allegation in the amended complaint, so the Court assumes it was an error.

Amended Complaint fails to allege how his constitutional rights were infringed/implicated by Defendants' alleged conduct." (Doc. 18 at 23.)

As for the First Amendment claim, Starnes alleges that "Defendants, in their official capacities, punished [Starnes] for exercising his First Amendment rights." (Doc. 17 at ¶ 47.) Although Starnes's amended complaint includes several legal conclusions—e.g., that Defendants "abridged and restrained [Starnes's] rights to free speech" and the violation of Starnes's First Amendment rights "constitutes an impermissible 'chilling effect' on constitutionally protected speech and expression," (Doc. 17 at ¶ 49)—it does not include factual allegations that support his claim. For example, the amended complaint does not identify the speech that the Defendants allegedly "abridged and restrained." His lunchtime talk about the narcotics department? His opposition to the ILP program? His refutation (if he ever made one) to the Internal Affairs Complaint? The Court does not know, the Defendants do not know, and—since this is the fifth attempt to plead his claims—Starnes apparently does not know either. In his response to Defendants' motion to dismiss, he argues that "he exercised his right to free speech by speaking up against the illegal misconduct of Defendants, and by refusing to participate in said misconduct, particularly when he refused to create fraudulent evaluations against another Deputy, Brent Taber, just because Defendants wanted to fire him." (Doc. 23 at 14.) But he does not actually describe his speech in relation to any particular misconduct, establish that he was speaking as a

private citizen on a matter of public concern instead of as a government employee, or explain how this unidentified speech was connected to Defendants' allegedly retaliatory action. *See Lamar v. Clayton Cnty. Sch. Dist.*, 605 F. App'x 804, 806–07 (11th Cir. 2015). And, importantly, a response in opposition to a motion to dismiss does not cure deficiencies in the pleading itself. Starnes must make those allegations in the operative complaint.

As for the Fifth and Fourteenth Amendment claims, Starnes provides only conclusory statements and wholly fails to support his conclusions with factual allegations. In the penultimate paragraph of Count II—the only paragraph of the complaint that references the alleged Fifth and Fourteenth Amendment violations—Starnes states that Defendants, in their official capacities, "denie[d Starnes] equal protection of the law in that the Defendants' conduct was arbitrary, oppressive and capricious and unreasonably required [Starnes] to submit to controls not imposed on other similarly situated Sheriff's Deputies" and "constitute[d] an unlawful and unauthorized taking of [Starnes's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment." (Doc 17 at ¶ 49.) Starnes never includes any other allegations relating to these constitutional claims. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. But neither the amended complaint nor the response in opposition to the motion to dismiss contains such allegations; neither paper

identifies how Defendants' conduct was arbitrary or capricious; alleges that Starnes was treated differently than other similarly situated persons, *see Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009) ("The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner.")—much less identify another similarly situated person; or explain why Starnes's *resignation* was entitled to due process and how that due process was deficient. Limiting the Court's consideration "to the well-pleaded factual allegations," the Court finds these constitutional claims insufficiently pleaded. *La Grasta.*, 358 F.3d at 845.

Finally, as an overall fatal flaw, the amended complaint lacks any theory of municipal liability. Starnes brings Count II against Defendants in their official capacities only. (*See* Doc. 17 at ¶¶ 46, 47, 49, 50.) "A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents." *Lopez v. Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019). Thus, a suit against Defendant Nocco[8] is effectively an action against the governmental entity that Defendant Nocco represents—here, Pasco County. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). And municipal liability exists only when a "'policy

---

[8] In Starnes's response in opposition to Defendants' motion to dismiss, he acknowledges that suing all named Defendants in their official capacity is redundant and unnecessary. (Doc. 23 at 13.) Accordingly, he "drop[s] the allegations against all Defendants *other than Nocco* in their official capacities." (*Id.*) But whether against Nocco in his official capacity or all named Defendants in their official capacities, Starnes's constitutional claims still fail for several reasons, one of which is the failure to plead a theory of municipal liability.

or custom' of the municipality inflicts the injury." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116; *see Lopez*, 770 F. App'x at 991. An official policy or custom can manifest in several ways. For example, municipal liability may be premised on a single illegal act by a municipal officer—but only "when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Lopez*, 770 F. App'x at 991 (quotation omitted).

Although Starnes argues that retaliating against employees for exercising their First Amendment rights is "the policy and custom of the Sheriff's Office," (Doc. 23 at 14), Starnes does not demonstrate how retaliation represents official policy or identify a municipal officer with final policymaking authority. And Starnes's statement that the "policy and custom" of the Sheriff's Office was to violate its employees' First Amendment rights is a generalized conclusion that alone cannot establish liability for the Sheriff's Office. Further, this argument is confined to Starnes's response; the amended complaint is devoid of any such allegations. Accordingly, Starnes's constitutional claims fail.

## IV.   Conclusion

In her own words, Judge Honeywell "rarely" holds hearings on a motion to dismiss. *Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS, (Doc. 171 at 8). But she did in the Squitieri litigation because she "felt so strongly about the condition of [the] Second Amended Complaint." *Id.* Needing to "tell [counsel] about [her] concerns with the complaint," she

informed Mr. McGuire in the hearing that he would have "one final opportunity to file a complaint that complies with the rules of civil procedure." *Id.* Starnes, still represented by the same counsel, has now filed two additional complaints since that hearing. In total between the Squitieri litigation and here, Starnes has filed five complaints. And after quintuple chances, his amended complaint remains deficient and warrants dismissal as a shotgun pleading and for failure to state a claim upon which relief may be granted. Starnes received more than fair notice of the defects in his complaint, yet rebuffed all warnings to remedy them. Accordingly, the Court dismisses this case with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, it is **ORDERED**:

(1) Defendants' motion to dismiss Starnes's amended complaint is **GRANTED**. (Doc. 18).

(2) The Court **DISMISSES WITH PREJUDICE** Counts I and II of Starnes's amended complaint.

(3) The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on August 21, 2021.

Kathryn Kimball Mizelle
United States District Judge